**Michael J. McKEOWN, Appellee,**

v.

**G. Thomas BAILEY and Evelyn H. Bailey, His Wife, Appellants (Two Cases).**

Superior Court of Pennsylvania.

Argued Oct. 27, 1998.

Filed June 4, 1999.

Michael N. Corr, West Chester, for appellants.

Holly B. Conway, Stroudsburg, for appellee.

Before MUSMANNO, J., CERCONE, President Judge Emeritus, and BECK, J.

PER CURIAM:

¶ 1 This is a consolidated direct appeal from two orders entered by the Trial Court, one denying Appellants' petition to appeal from a decision by a District Justice, and the other denying a motion for reconsideration, a motion to strike judgment and a petition to open the judgment. We reverse and remand for further proceedings.

¶ 2 Appellee, Michael J. McKeown, filed a suit before a District Justice seeking damages against Defendants/Appellants, G. Thomas Bailey and his wife, Evelyn H. Bailey, on a breach of a contract claim. Appellee averred that he procured a buyer for a parcel of real property owned by Appellants and alleged that the Appellants therefore owed him five percent (5%) of the sales price. District Justice Thomas R. Shiffer, Jr. conducted a hearing on October 9, 1997 at which Appellants appeared *pro se*. See Appellants' Brief at 10. On that same day, the District Justice entered judgment in favor of Appellee in the amount of two thousand three hundred nineteen dollars and fifty cents ($2,319.50). As the Honorable Jerome P. Cheslock has noted correctly, the Appellants had thirty (30) days in which to appeal the judgment of the District Justice. See Trial Court Opinion dated March 11, 1998 at 1–2 (hereinafter "Trial Court Opinion"). Thus, the Appellants had until November 10, 1997 in which to file their appeal. *Id.* at 1.[1]

¶ 3 Appellants allege that they filed a timely Notice of Appeal form on October 23, 1997, although they concede that they failed to send the Notice of Judgment at that time. See Appellants' Brief at 8–9. On November 7, 1997, the Prothonotary's Office of Monroe County telephoned Appellants' counsel to inform him that the Notice of Judgment had not been received. *Id.* Appellants' counsel promptly sent a copy of the Notice of Judgment to the Prothonotary via United States Mail. *Id.* However, on November 13, 1997, Appellants' counsel telephoned the Prothonotary and learned that the Notice of Appeal had been neither time-stamped nor docketed because the Prothonotary did not receive the Notice of Judgment within the thirty day period established by the pertinent

---

1. Technically, the thirtieth day of the appeal period was November 8, 1997. Because this date fell on a Saturday, the appeal period expired on Monday, November 10, 1997.

Rules. *Id. Accord* Trial Court Opinion at 1–2 (discussing the facts underlying the present appeal).

¶ 4 Appellants subsequently requested the Trial Court to either declare the appeal timely, or, in the alternative, to permit them to file an appeal *nunc pro tunc.* The Trial Court heard argument on the matter on February 2, 1998. Judge Cheslock thereafter denied relief via an order and opinion filed March 11, 1998. Judgment was entered in favor of Appellee on March 19, 1998. On March 30, 1998, Appellants lodged a timely notice of appeal with the Superior Court from the final judgment. On April 20, 1998, Appellants filed a motion to open and/or strike the judgment entered in the Trial Court. Three days later, on April 23, 1998, Judge Cheslock denied Appellants' motion for reconsideration, the motion to strike judgment and their motion to open judgment. Appellants filed a timely appeal from this order also.

¶ 5 The instant consolidated appeal presents two issues for our consideration:

1. Whether the Trial Court abused its discretion and/or committed an error of law by failing to grant an appeal nunc pro tunc from the District Court where a notice of appeal was timely filed, [Appellants] showed good cause, and there exist extraordinary circumstances involving a breakdown in the court's operation through a default of its officers?

2. Whether the Trial Court abused its discretion and/or committed an error of law by denying defendants' Petition to Open the Judgment where the [Appellants] demonstrated a meritorious defense of the claim and the record contained sufficient evidence.

Appellants' Brief at 6.

¶ 6 Appellants first contend that the Trial Court should have permitted them to file an appeal *nunc pro tunc* from the judgment of the District Justice. Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the Trial Judge.

*Perin v. Gochnauer,* 173 Pa.Super. 609, 98 A.2d 755, 756 (1953); *Baker v. City of Philadelphia,* 145 Pa.Cmwlth. 421, 603 A.2d 686, 689 (1992). More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. *Perin,* 98 A.2d at 756–757. As a general matter, a Trial Court may grant an appeal *nunc pro tunc* when a delay in filing is caused by "extraordinary circumstances involving 'fraud or some breakdown in the court's operation through a default of its officers.'" *Cook v. Unemployment Compensation Board of Review,* 543 Pa. 381, 383–84, 671 A.2d 1130, 1131 (1996).

> [W]here an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal nunc pro tunc.

*Id.* at 384–85, 671 A.2d at 1131. Tardy filings of notices of appeal implicate the jurisdiction of the appellate tribunal to entertain a cause of action. *McKean County Animal Hospital v. Burdick,* 700 A.2d 541, 542 (Pa.Super.1997). Furthermore, although most other court paperwork is considered to be filed at the time of its postmark, notices of appeal are unique in that they are not filed until received by the Prothonotary. *Id.*

¶ 7 In the present case, the timing for the filing of the appeal is controlled by Rule 1002 A of the Rules of Civil Procedure Governing Actions and Proceedings Before District Justices:

### Time and Method of Appeal

A. A party aggrieved by a judgment for money, or a judgment affecting the delivery of possession of real property arising out of a nonresidential lease, may appeal therefrom within thirty (30)

days after the date of the entry of the judgment by filing with the prothonotary of the court of common pleas a notice of appeal on a form which shall be prescribed by the State Court Administrator together with a copy of the Notice of Judgment issued by the district justice. The prothonotary shall not accept an appeal from an aggrieved party which is presented for filing more than thirty (30) days after the date of judgment without leave of court and upon good cause shown.

Rule 1002 A. Pa.R.C.P.D.J.

█ ¶ 8 The phrase "good cause shown" has not been precisely defined by the Rules. However, Pennsylvania case law has interpreted this phrase as requiring an appealing party to proffer some "legally sufficient reason" for requesting relief. *See, e.g., Slaughter v. Allied Heating*, 431 Pa.Super. 348, 636 A.2d 1121, 1123 (1993), *appeal denied*, 539 Pa. 669, 652 A.2d 839 (1994) (explicating Rule 1006 Pa. R.C.P.D.J.). "The determination of whether good cause has been demonstrated is trusted to the trial court's sound discretion." *Id.*

█ ¶ 9 As previously stated, notices of appeal are not filed until received by the Prothonotary. *McKean County Animal Hospital*, 700 A.2d at 543. In the instant case, the District Justice's judgment was entered on October 9, 1997. The Notice of Appeal was "received by the Prothonotary" well within thirty days, by October 23, 1997. However, the Prothonotary's Office did not file and docket the Notice of Appeal at the time it was received, nor did it immediately notify Appellants that the filing was rejected as incomplete. Instead the Prothonotary waited until November 7, 1997 to notify the Appellants. Upon being notified, Appellants mailed the Notice of Judgment. Because the Notice of Judgment was not received before November 10, 1997, the date on which the appeal period expired, the Prothonotary refused to docket the appeal. We find that, under this specific set of circumstances, the Trial Court abused it discretion in not granting Appellants' petition to appeal *nunc pro tunc*.

█ ¶ 10 An appeal *nunc pro tunc* may be permitted where the delay in filing has been caused by fraud or a breakdown in the court's operation through default of its officers. *Cook, supra*. In the present case, the Prothonotary neither timely docketed the Notice of Appeal, nor immediately informed Appellants that their filing was incomplete. We deem this as a breakdown in the court's operation.

> A Prothonotary may have the power, and even the duty, to inspect documents tendered for filing and to reject them if they are not on their face in the proper form ... but this power is limited. He is not in the position of an administrative officer who has discretion to interpret or implement rules and statutes.... Any question of construction must be resolved by the courts, not by the Prothonotary nor the parties. The Prothonotary must accept papers and file them.

*Warner v. Cortese*, 5 Pa.Cmwlth. 51, 288 A.2d 550, 552 (1972) (citations and quotations omitted).

¶ 11 Our conclusion that a "breakdown in court operations" occurred in this case is also supported by the following excerpt from the Prothonotary's Procedures Manual, which specifically deals with appeals from a District Justice's order:

> Appeal forms shall contain addresses of all parties, attorneys' Supreme Court I.D. number, if applicable, and original signature of appellant or attorney. If in proper order, *Prothonotary shall file and assign Court of Common Pleas number upon payment of the filing fee. Original appeal form is retained and copies returned to filing attorney for service.*

Prothonotary's Procedures Manual at E–1–1, ¶ 6 (emphasis added). In this case, there is no allegation that the Notice of Appeal form did not contain the required

information or that the filing fee was not paid. Therefore, it was the duty of the Prothonotary to file the Notice of Appeal and assign it a court number, and to send a time-stamped copy to the filing attorney.

¶ 12 Moreover, close analysis of Rule 1002 A leaves open the question of whether the Notice of Judgment is required in the instant matter. The comment to Rule 1002 A provides that a "copy of the Notice of Judgment must be filed since it will contain separate entries required by Pa.R.C.P.D.J. No. 514 A and will be needed by the Prothonotary." Rule 514 A describes entries that the District Justice must make when rendering a judgment in an action for Recovery of Real Property in landlord/tenant disputes. Since the instant case does not implicate a landlord-tenant matter, it is for the Court, not the Prothonotary, to decide whether the Notice of Judgment is required before an appeal may be docketed. Moreover, the mandate contained in Rule 1002 A regarding the filing of a Notice of Judgment does not suggest that the Prothonotary may decline to docket an otherwise timely filed Notice of Appeal on the grounds that the Notice of Judgment is not attached.

¶ 13 We note that although statutory requirements for perfecting an appeal are jurisdictional in nature, appeals *nunc pro tunc* have been allowed where the petitioning party has made an "honest effort" and where the petitioning party has been in "substantial compliance" with the rules. *See Pullium v. Laurel School District.*, 316 Pa.Super. 339, 462 A.2d 1380 (1983) (appeal from arbitration not quashed where notice of appeal was timely filed although proper costs were not timely paid); *Armstrong v. Travelers Insurance Co.*, 310 Pa.Super. 263, 456 A.2d 602 (1983) (late payment of costs on appeal from arbitration did not invalidate appeal where

there was "honest effort" to comply, and "substantial compliance" with statutory requirements). *See also Cook, supra (nunc pro tunc* appeal should be allowed where Appellants addressed their oversight promptly and there was no prejudice to opposing party). The record supports the conclusion that Appellants made an honest effort and were in substantial compliance with the relevant procedural rules. For the foregoing reasons, we reverse the Trial Court and allow an appeal *nunc pro tunc*.[2]

¶ 14 The orders of March 11, 1998 and April 23, 1998 are reversed. The case is remanded for proceedings consistent with this opinion. Superior Court jurisdiction relinquished.

---

2. We see no need to address the issue concerning Appellants' Petition to Open/Strike Judgment, which was filed in the Court of Common Pleas on April 20, 1998, and which the Trial Court denied three days later. The Petition was not filed until after Appellants lodged their appeal with this Court on March 30, 1998. The Trial Court therefore was divested of jurisdiction to act in the matter. *See* Pa.R.A.P. 1701.