Robert AMICONE, Appellant,

v.

Craig ROK t/d/b/a Rok Towing t/d/b/a Craig Towing, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 22, 2003.

Filed Dec. 19, 2003.

JoAnne Amicone, Ligonier, for appellant.

Karyn A. Rok, Carnegie, for appellee.

Before: HUDOCK, GRACI, JJ., and McEWEN, P.J.E.

GRACI, J.:

¶ 1 Appellant, Robert Amicone ("Amicone"), appeals from the order entered on April 11, 2003 in the Court of Common Pleas of Allegheny County, denying his petition to file an appeal *nunc pro tunc.* After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 On September 12, 2002, Amicone filed a complaint against Appellee, Craig Rok t/d/b/a Rok Towing t/d/b/a Craig Towing ("Rok"), alleging that Rok damaged his vehicle while towing it.

¶ 3 A hearing was held before District Justice Douglas W. Reed. On October 15, 2002, District Justice Reed entered judgment in favor of Rok and against Amicone.

¶ 4 Pursuant to Rule 1002.A of the Pennsylvania Rules of Civil Procedure for District Justices, Amicone had thirty days from the entry of judgment, or until November 14, 2002, to file an appeal with the court of common pleas. *See* Pa.R.C.P.D.J. 1002.A. Rule 1002 states, in pertinent part:

Rule 1002. Time and Method of Appeal

A. A party aggrieved by a judgment for money, or a judgment affecting the delivery of possession of real property arising out of a nonresidential lease, may appeal therefrom within thirty (30) days after the date of the entry of the judgment by filing with the prothonotary of the court of common pleas a notice of appeal on a form which shall be prescribed by the State Court Administrator together with a copy of the Notice of Judgment issued by the district justice. The prothonotary shall not accept an appeal from an aggrieved party which is presented for filing more than thirty (30) days after the date of entry of the judgment without leave of court and upon good cause shown.

Pa.R.C.P.D.J. 1002.A.

¶ 5 On November 12, 2002, the Allegheny County Prothonotary's Office received Amicone's notice of appeal but did not docket it. Pa.R.A.P.1925(a) Opinion, 4/28/03, at 1. Through a notice dated November 13, 2002, which was apparently mailed on November 15, 2002, the prothonotary's office returned Amicone's filing, stating that it needed "District Justice Paper and Cover Sheet." Notice, 11/13/02; Pa.R.A.P.1925(a) Opinion, at 1.

¶ 6 More than four months later, on March 26, 2003, Amicone filed a petition to file an appeal *nunc pro tunc.* Pa.R.A.P. 1925(a) Opinion, at 2. On April 11, 2003, the distinguished trial court, the Honorable R. Stanton Wettick, Jr., Judge of the Court of Common Pleas of Allegheny County, denied Amicone's petition because there was no satisfactory explanation for the lengthy delay in filing the petition. *Id.*

¶ 7 Amicone has filed a timely appeal and now raises the following issues for our review:

QUESTION: Did the Plaintiff file a timely Notice of Appeal from District Justice Judgment; Allegheny County's Form entitled Plaintiff's Notice of Appeal from District Justice Judgment; Notice of Judgment/Transcript Civil Case; an attorney check in the amount of sixty-eight dollars ($68.00); and a self-addressed stamped envelope, all of which were sent by certified mail, return receipt, and received by the Allegheny County Prothonotary's Office prior to the expiration of the thirty day appeal period?

.        .        .        .        .

QUESTION: Did the Allegheny County Prothonotary's Office err in not accepting for filing the Plaintiff's Notice of Appeal from District Justice Judgment; Allegheny County's Form entitled Plaintiffs [sic] Notice of Appeal From District Justice Judgment; Notice of Judgment/Transcript Civil Case; an attorney check in the amount of sixty-eight dollars ($68.00); and a self-addressed stamped envelope, all of which were sent by certified mail, return receipt, and received by the Allegheny County Prothonotary's Office prior to the expiration of the thirty day appeal period?

.        .        .        .        .

QUESTION: Was the Plaintiff prevented from filing a timely appeal due to the negligence of a court official or a breakdown within the court system which resulted from the actions of the Allegheny County Prothonotary's Office in not accepting for filing the Plaintiff's Notice of Appeal from District Justice Judgment; Allegheny County's Form entitled Plaintiffs [sic] Notice of Appeal From District Justice Judgment; Notice of Judgment/Transcript Civil Case; an attorney check in the amount of sixty-eight dollars ($68.00); and a self-addressed stamped envelope, all of which were sent by certified mail, return receipt, and received by the Allegheny County Prothonotary's Office prior to the expiration of the thirty day appeal period?

.        .        .        .        .

QUESTION: Were the actions of the Plaintiff are [sic] demonstrative of the timely Petition to File Appeal Nunc Pro Tunc notwithstanding the erroneous information provided to Plaintiff by the Allegheny County Prothonotary's Office and their refusal to docket or even time stamp Plaintiff's Petition to File Appeal Nunc Pro Tunc?

.        .        .        .        .

QUESTION: Assuming arguendo that the Plaintiff's Petition to File Appeal Nunc Pro Tunc was not timely, was this due to the negligence of a court official or a breakdown within the court system?

.        .        .        .        .

Appellant's Brief, at 5–6.[1]

1. Rule 2116(a) of the Pennsylvania Rules of Appellate Procedure states:
   (a) General rule. The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception[.]

Pa.R.A.P. 2116(a). Moreover, Rule 2119(a) provides:
   (a) General rule. The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by discussion and citation of authorities as are deemed pertinent.
Pa.R.A.P. 2119(a). Failure to conform briefs to the requirements of the Rules of Appellate

## II. DISCUSSION

¶ 8 Amicone essentially argues that the lower court erred in denying his petition to file an appeal *nunc pro tunc.* Citing *McKeown v. Bailey,* 731 A.2d 628 (Pa.Super.1999), Amicone contends that his petition should have been granted since there was "fraud or some breakdown in the court's operation through a default of its officers." Appellant's Brief, at 17 (quotation omitted). In light of this Court's recent decision in *Nagy v. Best Home Services, Inc.,* 829 A.2d 1166 (Pa.Super.2003), which relies on *McKeown,* we agree that there was a breakdown in the court's operation through a default of its officers. Nevertheless, since Amicone did not file his petition to file an appeal *nunc pro tunc* within a reasonable time, we find that the lower court did not err in denying Amicone's petition.

¶ 9 "[T]he standard of review applicable to the denial of an appeal *nunc pro tunc* is 'whether the trial court abused its discretion.'" *Freeman v. Bonner,* 761 A.2d 1193, 1194 (Pa.Super.2000) (citation omitted). "An abuse of discretion is not merely an error of judgment but is found where the law is 'overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record.'" *Id.* at 1194–95 (citation omitted).

In the usual case, where a party requests permission to file an appeal *nunc pro tunc,* it is because counsel for the appealing party has not timely filed an appeal. That party must therefore show more than mere hardship. Rather, a trial court may grant such an appeal only if the delay in filing is caused by "extraordinary circumstances involving 'fraud or some breakdown in the court's operation through a default of its officers.'"

*Nagy,* 829 A.2d at 1167 (citations omitted). The petition to file an appeal *nunc pro tunc* must be filed within a reasonable time. *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154, 157 (1938); and *Com., Dept. of Transp., Bureau of Driver Licensing v. Emery,* 135 Pa.Cmwlth. 274, 580 A.2d 909, 912 (1990) (quotation omitted). Moreover, in *Bass v. Commonwealth Bureau of Corrections, et al.,* 485 Pa. 256, 401 A.2d 1133 (1979), our Supreme Court found that

where an appellant, an appellant's counsel, or an agent of appellant's counsel has failed to file a notice of appeal on time due to non-negligent circumstances, the appellant should not lose his day in court. *Id.* at 1135. Therefore, the *Bass* Court expanded the limited exceptions for allowing an appeal *nunc pro tunc* to permit such an appeal where the appellant proves that: (1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay. *See id.* at 1135–36. (allowing appellant to appeal *nunc pro tunc* where appeal was filed four days late because appellant's attorney placed the notice of appeal on the desk of the secretary responsible for

Procedure may result in the quashing or dismissing of an appeal where the defects in the brief are "substantial." Pa.R.A.P. 2101.

Here, Amicone's statement of the questions involved exceeds fifteen lines and one page. Moreover, although Amicone's statement of the questions involved sets forth five separate issues, the argument section of his brief is undivided. We will ignore these defects and address the merits of this appeal, but we strongly caution counsel for Amicone that failure to follow the Rules of Appellate Procedure can have dire consequences for counsel's clients.

ensuring that appeals were timely filed and the secretary became ill and left work, not returning until after the expiration of the period for filing an appeal); *see also Cook v. Unemployment Comp. Bd. of Review*, 543 Pa. 381, 671 A.2d 1130, 1132 (1996) (granting appeal *nunc pro tunc* where claimant filed appeal four days late because he was hospitalized).

*Criss v. Wise*, 566 Pa. 437, 781 A.2d 1156, 1159 (2001); *see also Cook*, 671 A.2d at 1131 (observing that *Bass* added the third exception of non-negligent conduct of the appellant's attorney or the attorney's staff to the two previously recognized "extraordinary circumstances" of "fraud or some breakdown in the court's operation through a default of its officers" which would allow relief from the jurisdictional appeal period).[2] In *McKeown*, quoting *Cook, id.*, on this point, we said:

> [W]here an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal nunc pro tunc.

*McKeown*, 731 A.2d at 630. Thus, it is clear that, whatever extraordinary circumstance is alleged as the reason for the late filing of the appeal—fraud, breakdown of the court's operation through default of its officers, or non-negligent conduct on the part of appellant, appellant's attorney, or the attorney's staff—the petition to file the appeal *nunc pro tunc* must be filed within a reasonable time after the occurrence of the extraordinary circumstance.[3]

¶ 10 In *Nagy*, the district justice entered judgment against the appellant on April 30, 2002. On May 24, 2002, the appellant's counsel mailed a notice of appeal. On May 28, 2002, the prothonotary's office received the notice of appeal but did not time-stamp it or docket it. Instead, the prothonotary's office returned the notice of appeal by mail since it was not signed by the appellant or his counsel and since it did not include a copy of the district justice's judgment. The appellant's counsel did not receive the returned notice of appeal until May 30, 2002, at which time he signed it and returned it by mail to the prothonotary's office. However, on June 2, 2002, the prothonotary's office informed the appellant's counsel by telephone that the appeal was untimely. Only four days later, on June 6, 2002, the appellant's counsel filed a petition to file an appeal *nunc pro tunc*.

¶ 11 Citing *McKeown*, where a *per curiam* panel of this Court found a breakdown in the court's operations under similar circumstances, *McKeown*, 731 A.2d at 631,[4] the *Nagy* Court stated, "[W]e find

---

**2.** *Cook*, it should be noted, relied on *Nixon*, supra.

**3.** Neither *Nagy* nor *McKeown* cast any doubt on this proposition. The timeliness of the petition is among the factors which the trial court must consider in exercising its discretion when deciding a petition for leave to appeal *nunc pro tunc*.

**4.** In *McKeown*, the district justice entered judgment in favor of the appellee on October 9, 1997. On October 23, 1997, the appellants filed a notice of appeal but failed to send the notice of judgment. On November 7, 1997, the prothonotary's office informed the appellants' counsel by telephone that the notice of judgment had not been received. Appellants' counsel, therefore, promptly sent a copy of the notice of judgment to the prothonotary's office by mail. On November 13, 1997, however, the appellant's counsel learned that the notice of appeal had not been time-stamped or docketed since the prothonotary's office did not receive the notice of judgment within

the delay in filing the appeal excusable because of a breakdown in the court's operations, specifically, the Prothonotary's failure to time-stamp and docket the timely-filed, albeit flawed, notice of appeal." *Nagy*, 829 A.2d at 1168. According to the *Nagy* Court, "[U]nder the rules of civil procedure a document is filed when it arrives at the prothonotary's office, regardless of the date the document is time-stamped." *Id.* at 1169 (quoting *Griffin v. Central Sprinkler Corp.*, 823 A.2d 191, 202 (Pa.Super.2003), relying, in part, on *Criss v. Wise*, 566 Pa. 437, 781 A.2d 1156, 1159 (2001)).

Rule 1002.A delineates the parameters of the Prothonotary's power not to accept appeals to those that are "presented for filing more than thirty (30) days after the date of judgment ...." Pa. R.C.P.D.J. 1002.A. Thus, while the Prothonotary must inspect documents that are sent for filing to ensure they are in the proper form, the power to reject such documents is limited to notifying the proper party that the document is defective so that the defect may be corrected through amendment or addendum. To hold otherwise would be to confer on the Prothonotary the power to "implement" the Rules governing the form of an appeal and to determine, based upon criteria other than the date they are received, which appeals are timely. Such a power is inconsistent with our [S]upreme [C]ourt's pronouncement that a document is filed when the Prothonotary receives it. *Criss, supra*, at 442, 781 A.2d at 1159. Once filed, a notice of appeal is, as with an appeal filed in this [C]ourt, subject to being stricken or dismissed for failing to cure defects on its face.

*Id.* at 1170, 781 A.2d 1156.

█ ¶ 12 Here, the prothonotary's office received Amicone's notice of appeal on November 12, 2002, within the thirty-day deadline prescribed by Rule 1002, and was, therefore, required to file Amicone's appeal. Although the prothonotary's office was responsible for notifying Amicone that his filing was defective so that Amicone could correct it through amendment or addendum, the prothonotary's office was without the power to reject the appeal. Accordingly, since the prothonotary's office erred by not filing Amicone's appeal, we agree that there was a breakdown in the court's operation through a default of its officers.

█ ¶ 13 Nevertheless, different from the appellants in *Nagy* and *McKeown*, Amicone did not file his petition to file an appeal *nunc pro tunc* within a reasonable period of time after the prothonotary's office rejected his notice of appeal. Indeed, our review of the certified record reveals that Amicone did not file his petition to file an appeal *nunc pro tunc* until March 26, 2003, more than four months after the prothonotary's office rejected Amicone's filing. In his petition, Amicone argued that his attorney was hospitalized from November 12, 2002 until November 14, 2002 and that she underwent numerous diagnostic procedures from November 12, 2002 until December 15, 2002.[5] Ami-

---

the thirty-day appeal period. While the exact date of the filing of the request to file the appeal *nunc pro tunc* is not clear from the *McKeown* opinion, since argument was held on the *nunc pro tunc* request on February 2, 1998, *id.* at 630, it is clear that it was filed less than three months after the notice of appeal was rejected by the prothonotary's of-

fice and well short of the more than four-month delay in this case.

5. In the "Statement of the Case" section of his brief, Amicone's counsel relates for the first time on appeal how she attempted to file the petition several times between December 2002 and February 2003. Since none of

cone never explained to the trial court why the petition to file an appeal *nunc pro tunc* was not filed until March 26, 2003. The trial court explained that he "denied the petition to file appeal nunc pro tunc because of the lengthy delay after the expiration of the appeal period before the petition was presented, coupled with the absence of a satisfactory explanation [for that delay]." Pa.R.A.P. 1925(a) Opinion, at 2. On this record, there is no abuse of discretion in this determination.

### III. CONCLUSION

¶ 14 Since the prothonotary's office did not file Amicone's initial notice of appeal, that there was a breakdown in the court's operation through a default of its officers. Nevertheless, since Amicone did not file his petition to file an appeal *nunc pro tunc* within a reasonable time after the prothonotary's office rejected his filing, we find that the trial court did not abuse its discretion in denying Amicone's petition.

¶ 15 Order affirmed.

¶ 16 McEWEN, P.J.E., concurs in result.

these contentions are supported by evidence in the certified record, we may not consider them. *See School Dist. of Borough of Aliquippa v. Maryland Cas. Co.*, 402 Pa.Super. 569, 587 A.2d 765, 768 (1991) (stating that this Court "may only consider the facts which have been duly certified in the record on appeal") (citation omitted).