J-S51031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.A.G., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| R.L.B., JR., | |
| Appellant | No. 655 MDA 2014 |

Appeal from the Order entered on December 6, 2013,
in the Court of Common Pleas of Lancaster County,
Domestic Relations, at No(s): 2013-00282

BEFORE: BOWES, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 18, 2014**

R.L.B., Jr. ("Appellant"), appeals, *pro se*, from the Order requiring him to provide support to M.C. ("Child"), born in June 2004, who resides in the Commonwealth of Virginia with S.A.G. ("Mother"). We reverse and remand for further proceedings.

On January 23, 2013, Mother filed a Support Petition, seeking support for Child from Appellant and requesting a determination of paternity of Child. In response to Mother's Support Petition, the trial court ordered Appellant to undergo genetic testing. Appellant filed Preliminary Objections to the Support Petition, asserting the doctrine of paternity by estoppel with regard to another male individual, R.C. The trial court then stayed the genetic testing Order, pending a paternity hearing.

Following a paternity hearing conducted on April 16, 2013, the trial court again ordered Appellant to undergo genetic testing. The trial court also ordered certified copies of all court orders from Virginia regarding Child (whether in custody or support actions, including any paternity action involving R.C.). The trial court scheduled another paternity hearing for August 7, 2013.

Genetic test results dated May 21, 2013 indicated a 99.99% or more probability that Appellant is the biological parent of Child. Accordingly, on May 23, 2013, the trial court issued a Rule against Appellant, pursuant to Pa.R.C.P. 1910.15(d)(3), directing him to show cause why an order should not be entered finding him to be Child's father, and referring the action to conference and hearing, as in other actions for support.[1]

On August 7, 2013, the trial court conducted a second paternity hearing, at which both Mother and Appellant testified.[2] The trial court also questioned Child, *in camera*, in the presence of Mother's counsel, with Appellant's agreement. Appellant also agreed to the admission of certified

---

[1] The trial court initially directed that the Rule was returnable within 20 days. However, the trial court entered an amended Order directing the Rule to be returnable at the paternity hearing scheduled for August 7, 2013, at which Appellant's written response to the Rule would be addressed.

[2] Appellant was represented by counsel, David Wedge, Esquire ("Attorney Wedge"), at the first paternity hearing, but appeared *pro se* at the second hearing. No entry of appearance for Attorney Wedge appears on the docket or in the certified record, nor is there any order granting the withdrawal of Attorney Wedge as counsel.

copies of two court Orders from Virginia ("the Virginia court Orders") regarding Child.[3] N.T., 8/7/13, at 5-6. Additionally, Appellant acknowledged that genetic testing established that he was the biological father of Child. *Id*. at 4.

On September 4, 2013, the trial court entered an Order ("Paternity Order")[4] finding that, based on the testimony presented and the results of genetic testing, Appellant was both the biological and legal father of Child, noting that genetic testing established, to a high degree of scientific probability, that Appellant is the biological parent of Child. Trial Court Order, 9/4/13, at 1. On September 5, 2013, the trial court ordered Appellant to appear before a conference officer for support proceedings on October 7, 2013.

Appellant, *pro se*, filed a Motion for Reconsideration of the trial court's

---

[3] The Virginia court Orders included an October 19, 2011 Consent Order ("the Virginia Consent Order") declaring R.C. the "psychological" father of Child and awarding joint physical custody of Child to Mother and R.C.; and an October 19, 2011 Order finding that R.C. is not Child's biological father. *See* N.T., 8/7/13, at 20-25; Plaintiff's Exhibits 1 and 2.

[4] The Paternity Order is dated September 3, 2013, but was not entered until September 4, 2013.

Paternity Order.[5] The trial court determined that it "was not bound to act upon Appellant's [M]otion [for Reconsideration of the trial court's Paternity Order], and did not do so." Trial Court Opinion, 6/6/14, at 1 ¶¶ 2-3.

On October 7, 2013, support proceedings were conducted before a conference officer, who issued a Recommended Order for support of Child to the trial court. On October 8, 2013, the trial court adopted the conference officer's Recommended Order, and entered an interim support Order directing Appellant to provide support for Child.[6]

On October 15, 2013, Appellant, *pro se*, filed a Demand for Hearing regarding the Recommended Order, asserting that the amount of support was excessive. On December 5, 2013, the trial court held a hearing regarding the Recommended Order, at which Appellant raised R.C.'s custody

---

[5] The Motion for Reconsideration is not indicated on the trial court's docket, nor is it included in the certified record. However, the trial court discussed the Motion for Reconsideration in its Opinion, and indicated that it was filed on October 2, 2013. *See* Trial Court Opinion, 6/6/14, at 1 ¶¶ 2-3. An attachment to Appellant's Brief, entitled "Motion for Reconsideration," is date-stamped September 24, 2013. The trial court has provided no explanation as to its failure to include the Motion for Reconsideration either on its docket or in the certified record. Accordingly, we have no means of determining when it was actually filed. We remind the trial court that the prothonotary must inspect documents presented for filing to ensure that they are in proper form, but the prothonotary has no power to reject documents, and must enter all documents for filing on the trial court's docket. *See Amicone v. Rok*, 839 A.2d 1109, 1115 (Pa. Super. 2003).

[6] The trial court found Appellant's net monthly income to be $1,639.57, and Mother's net monthly income to be $0. The trial court set the amount of Appellant's monthly support payment at $434.00 ($395.00 of which was current support and $39.00 of which was arrears), and directed that arrearages, in the amount of $3,806.38, were due, in full, immediately.

rights, and argued that the doctrine of paternity by estoppel precluded Mother from seeking support from Appellant. N.T., 12/5/13, at 5-6. On December 9, 2013, the trial court entered an Order ("Support Order")[7] adopting as final the conference officer's Recommended Order.

On January 31, 2014, Appellant, through counsel,[8] filed a Demand for Hearing on his *pro se* Motion for Reconsideration of the Paternity Order.[9] In his Demand for Hearing, Appellant asserted that (1) the trial court erred in finding him to be Child's father, in light of the Virginia Consent Order declaring R.C. the psychological father of Child and awarding joint physical custody of Child to Mother and R.C.; and (2) R.C. held himself out to be Child's father since her birth. ***See*** Demand for Hearing, 1/31/14, at 1.

On February 10, 2014, the trial court dismissed, with prejudice, Appellant's Demand for Hearing on his Motion for Reconsideration of the Paternity Order. The trial court reasoned that Appellant was foreclosed from

---

[7] The Support Order is dated December 6, 2013, but was not filed until December 9, 2013.

[8] Appellant's Demand for Hearing on his *pro se* Motion for Reconsideration of the Paternity Order was filed by Thomas Cusack, Esquire ("Attorney Cusack"). No entry of appearance for Attorney Cusack appears on the docket or in the certified record.

[9] This Demand for Hearing was not entered on the trial court's docket, but is referenced in and attached to the trial court's February 10, 2014 Order. ***See*** Trial Court Order, 2/10/14, at 1, and Exhibit thereto. The trial court's Order also references Mother's Reply to Appellant's Demand for Hearing. ***See id***. at 1. However, Mother's Reply was not entered on the trial court's docket, and is not attached to the February 10, 2014 Order or otherwise in the certified record. ***See id.***; ***see also Amicone***, ***supra***.

challenging the Paternity Order due to his failure to file a timely appeal from the Support Order. *See* Trial Court Order, 2/10/14, at 3.

On April 2, 2014, Appellant, *pro se*, filed an appeal.[10] On appeal, Appellant raises the following issues for our review:

> Is Appellant entitled to a new trial when, applying [] Pennsylvania [] [l]aw, the trial court abused its discretion and/or misapplied the law by:
>
> a. Omitting or failing to include evidence in the determining order, namely the [Virginia Consent O]rder [] naming [R.C.] the father of [Child][?]
>
> b. Refusing to acknowledge that this voluntary Acknowledgement of Paternity may only be cancelled by either party within 60 days after the form is signed or the date of a court proceeding related to the child, whichever is sooner. After the 60 days, the acknowledgement of paternity may be challenged in court ONLY on the basis of fraud, duress or material mistake of fact[?]

Appellant's Brief at 7.

Initially, we must determine whether this Court lacks jurisdiction over this appeal due to timeliness considerations. Both the trial court and Mother contend that Appellant's appeal is untimely and, hence, this Court lacks

---

[10] Appellant improperly filed his appeal with our Supreme Court, which transferred the appeal, and Appellant's accompanying Concise Statement of Errors Complained of on Appeal, to this Court in an Order entered April 15, 2014. The Supreme Court noted that Appellant appeared to be appealing the Support Order. *See* Order, 4/15/14, at 1.

jurisdiction over this appeal.[11] **See** Trial Court Opinion, 6/6/14, at 2-3 ¶¶ 7, 8, 11, 12; **see also** Mother's Brief at 1, 3, and 8.

Mother claims that Appellant improperly challenged the trial court's failure to rule on his Motion for Reconsideration of the Paternity Order, as it had already been denied by operation of law. **See** Mother's Brief at 8-9 n.11. Mother asserts that Appellant should have appealed the Support Order. **Id**. Finally, Mother contends that Appellant's appeal, forwarded to this Court from the Supreme Court, was improperly filed *pro se*, although Appellant's counsel had not filed a praecipe for withdrawal. **Id**. at 9.

Initially, pursuant to Rule 1910.15(f) of the Pennsylvania Rules of Civil Procedure, an order establishing paternity is not an appealable order, and the issue of paternity may be included in an appeal from the final order of child support. **See** Pa.R.C.P. 1910.15(f). Therefore, Appellant's failure to timely challenge the Paternity Order is not fatal to his appeal if he timely appealed from the Support Order.

Pursuant to Pa.R.C.P. 236(a)(2), the prothonotary must immediately give written notice to the parties of any order entered by the trial court. **See** Pa.R.C.P. 236(a)(2). Additionally, the prothonotary must note in the docket the giving of such notice. **See** Pa.R.C.P. 236(b). Finally, the date of entry of an order is "the day on which the clerk makes the notation in the

---

[11] Mother filed a Motion to Dismiss the appeal. On June 3, 2014, this Court denied Mother's Motion to Dismiss, without prejudice to Mother's right to re-raise the timeliness issue in her appellate brief.

docket that *notice* of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b) (emphasis added).

> Our Supreme Court has held that "an order is not appealable until it is entered on the docket *with the required notation that appropriate notice has been given."* ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (emphasis added). Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run. ***Id.*** at 621-22, 735 A.2d at 115. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30-day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. ***Id.***

***In re L.M.***, 923 A.2d 505, 508 (Pa. Super. 2007).

Our review of the record reveals that the prothonotary failed to indicate on the trial court docket that it provided notice of the Support Order to the parties, in compliance with Pa.R.C.P. 236(b).[12] Thus, the appeal period was not triggered. ***See Frazier***, 735 A.2d at 115. Accordingly, Appellant's appeal from the Support Order is not untimely, and we will proceed to review the merits of the appeal.

Our standard of review of support determinations involving a question of paternity is that of an abuse of discretion. ***See Vargo v. Schwartz***, 940 A.2d 459, 462 (Pa. Super. 2007).

> An abuse of discretion exists if the trial court misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a

---

[12] We note, with disapproval, that the trial court's docket fails to reflect that Rule 236(b) notice was issued for *any* of the Orders entered in this case.

reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough that we, if sitting as a trial court, may have made a different finding.

*Doran v. Doran*, 820 A.2d 1279, 1282 (Pa. Super. 2003) (quotations omitted). When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. *R.K.J. v. S.P.K.*, 77 A.3d 33, 37 (Pa. Super. 2013) (involving a claim of paternity by estoppel).

Appellant contends that the trial court failed to consider all of the evidence in the case, and misapplied the law through the omission of evidence. Appellant's Brief at 13-14. Specifically, Appellant contends that the trial court failed to consider the Consent Order naming R.C. as Child's father. *Id*. at 13. Appellant points out that R.C. signed Child's birth certificate and that Child bears R.C.'s surname. *Id*. at 15. Thus, Appellant argues, R.C. is Child's father by means of the doctrine of paternity by estoppel. *Id*. at 11-12.

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (*e.g.*, holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.... [T]he doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

*Brinkley v. King*, 701 A.2d 176, 180 n.5 (Pa. 1997) (emphasis and citation omitted). The doctrine of paternity by estoppel seeks to protect the interests of the child. *T.E.B. v. C.A.B.*, 74 A.3d 170, 173 (Pa. Super. 2013).

> Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he had known all his life is not in fact his father.

*Id*. at 173 (citation omitted).

The doctrine has most usually been applied either to (1) preclude a man who had held a child out as his own from avoiding further support of the child after his relationship with the mother had ended; or (2) preclude a woman who had held one man out as her child's father from seeking support from another man later on. *Id*. at 174 (citation omitted).

Paternity by estoppel will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child. *K.E.M. v. P.C.S.*, 38 A.3d 798, 810 (Pa. 2012). In *R.K.J.*, the court, relying on *K.E.M.*, specifically recognized the following factors as relevant to the child's best interests in a support case involving an allegation of paternity by estoppel:

> (1) a party cannot renounce an assumed duty of parentage when the innocent child would be victimized; (2) the law can prohibit a putative father from employing sanctions of the law to avoid the obligations that his assumed relationship with the child would impose; (3) the closeness of the child's relationship to the

putative father; (4) the harm that would befall the child if the putative father's parental status were to be disestablished; and (5) the need for continuity, financial support, and potential psychological security arising out of an established parent-child relationship.

***R.K.J.***, 77 A.3d at 38.

Here, in the Paternity Order, the trial court indicated, without discussion, that it considered the testimony presented and the results of genetic testing before determining that Appellant is both the biological and legal father of Child. ***See*** Trial Court Order, 9/4/13, at ¶ 1. The trial court failed to include any discussion reflecting either its consideration of Appellant's claim of paternity by estoppel, or the five factors identified in ***R.K.J.*** as relevant to a determination of paternity when there is a question of paternity by estoppel.[13] Notably, no testimony was received by R.C., whom Appellant seeks to establish, through estoppel, is Child's father.[14]

---

[13] In its February 10, 2014 Order, the trial court observed that its prior determination that Appellant is the biological and legal father of Child was based on "extensive testimony and other evidence presented in the course of the hearing" and "the results of genetic testing that established to a high degree of scientific probability that Appellant is the biological parent of Child." ***See*** Trial Court Order, 2/10/14, at 2. The trial court also noted that it had reviewed the Virginia court Orders. ***Id***. Finally, the trial court indicated, without discussion, that "the record contains evidence which bears upon the biological, social and emotional relationships between Child and the various father figures in [C]hild's life, and it includes evidence sufficient to support the making of findings in respect to [C]hild's best interest." ***Id***. While this Order references a broader basis for the trial court's determination than was indicated in the Paternity Order, the trial court nevertheless failed to discuss either the claim of paternity by estoppel or the five factors identified in ***R.K.J.***

[14] As noted by the Court in ***K.E.M.***, "absent undue hardship or impossibility, we do not believe a court should dismiss a support claim against a purported

-11-

J-S51031-14

Thus, we remand the matter to the trial court to consider the five factors identified in **R.K.J.**[15]

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2014

---

biological father based on an estoppel theory vesting legal parenthood in another man without the latter being brought before the court at least as a witness." **K.E.M.**, 38 A.3d at 809.

[15] We recognize that the trial court may need to take additional evidence and/or conduct further hearings in order to properly consider the five factors identified in **R.K.J.** Moreover, the trial court has the authority to appoint a guardian *ad litem* to advocate Child's best interests in concrete terms. **See K.E.M.**, 38 A.3d at 809.

-12-