J-S05033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1067 WDA 2023 |

Appeal from the Order Entered December 23, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-DP-0000089-2022

BEFORE: PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                          **FILED: APRIL 1, 2024**

D.B. (hereinafter "Father"), the father of minor child B.B. (born in April of 2022), purports to appeal *nunc pro tunc* from the trial court's adjudication and disposition order, entered on December 23, 2022, which found, *inter alia*, that Father had perpetrated physical abuse against B.B. After review, we are constrained to quash this appeal.

As the trial court explains in its Pa.R.A.P. 1925(a) opinion,

[t]his matter commenced with the minor child['s] being taken into custody by the [Westmoreland County Children's Bureau ("WCCB")] on June 21, 2022[,] with the verbal consent of the [c]ourt. A shelter care hearing took place before Hearing Officer Barbara Jollie, who recommended that the child remain in placement outside of the home of Father and … [N.C.] (hereinafter "Mother"), pending the outcome of the adjudication hearing. The adjudication and disposition hearing was scheduled initially for August 17, 2022, but was continued to October 12, 2022. When testimony was unable to conclude on that date, a second date of November 30, 2022[,] was scheduled. Mother made a request through her attorney to keep the record open for one additional

day of testimony to allow Mother, who was ill on November 30, 2022, to offer testimony on her own behalf. The [c]ourt obliged, and a final day of testimony took place on December 7, 2022. When the record closed, the [c]ourt took the matter under advisement and issued an order on December 23, 2022.[1]

Trial Court Opinion, 2/13/23, at 1-2.

The December 23, 2022 Adjudication and Disposition Order found that Father had perpetrated abuse against B.B.[2] In its opinion, the court explains the basis for its decision, as follows:

WCCB provided uncontroverted medical testimony that a physical examination of the Child revealed injuries so severe that the case was classified as a "near fatality."[3] The WCCB went on to establish a timeline within a reasonable degree of medical certainty as to when these injuries were sustained, as well as which parent was responsible for child care – including periods when both parents were home with the child, as well as when only one parent was home with the child. Lastly, the [c]ourt found that Mother offered credible and uncontroverted testimony that she did not do anything that would have resulted in such an injury to the child, and when she suspected that something was wrong with the

_____

[1] The court's order was dated November 30, 2022, but was not docketed until December 23, 2022.

[2] We need not detail the other aspects of the court's adjudication and disposition order, as they are not challenged by Father herein. However, we briefly mention that the order found B.B. to be a dependent child, removed her from the home of Father and Mother, and placed her in kinship care with her maternal grandmother. The court also provided legal custody of B.B. to the WCCB. The court did not enter a finding of abuse against Mother. Mother is not a party to this appeal.

[3] Specifically, Rachel Berger, M.D., a child abuse pediatrician at the Child Advocacy Center at Children's Hospital of Pittsburgh, testified that she evaluated B.B. and found "she had a large subdural hemorrhage over the whole right side of the brain." N.T. Hearing, 10/12/22, at 6, 19. Dr. Berger testified that B.B.'s injury was caused by "a shaking-type mechanician or an acceleration-deceleration-type" motion. *Id.* at 22. The doctor stated that had it not been for medical care, B.B. could have died. *Id.* at 21.

child, she acted immediately to figure out what happened and to obtain medical treatment. Father provided no such testimony to the [c]ourt. The only logical conclusion that the [c]ourt could reach is that Father, through either an intentional or reckless act, committed an act of abuse in the timeframe during which he was the only individual providing care for the child.

*Id.* at 2-3.

On January 11, 2023, Father's private counsel, Brian D. Aston, Esq., filed a notice of appeal on behalf of Father from the December 23, 2022 order finding Child to be a victim of abuse by Father. That appeal was considered a Children's Fast Track appeal and was docketed at 59 WDA 2023. However, Father did not file concomitantly with his notice of appeal a Pa.R.A.P. 1925(b) concise statement, as required by Pa.R.A.P. 1925(a)(2)(i). In light of this error, we ordered Appellant's private counsel to file a Rule 1925(b) statement no later than January 27, 2023, or the appeal would be dismissed for waiver of all issues pursuant to *Mudge v. Mudge*, 6 A.3d 1031 (Pa. Super. 2011), and *J.M.R. v. J.M.*, 1 A.3d 902 (Pa. Super. 2010) (stating that the failure to file a Rule 1925(b) Statement as ordered by the appellate court shall result in waiver of all issues and dismissal of the appeal). Appellant's counsel failed to file the Rule 1925(b) statement as ordered by this Court and, therefore, on February 27, 2023, we dismissed Father's appeal at 59 WDA 2023.

Seven months later, on September 5, 2023, Father's newly-hired, private counsel filed a "Petition For Ineffectiveness Assistance of Counsel" seeking "Post-Conviction Collateral Relief." On September 6, 2023, Appellant filed a notice of appeal, docketed at the instant 1067 WDA 2023, asserting that the trial court had reinstated his appellate rights *nunc pro tunc* by order

dated August 7, 2023. Attached to Father's instant notice of appeal, and also attached to the completed docketing statement, is a copy of a trial court order dated August 7, 2023, that granted Father's petition to reinstate his appeal rights *nunc pro tunc* to pursue a new appeal from the December 23, 2022 order. However, the August 7, 2023 order does not appear on the trial court docket. Moreover, there is no entry on the trial court docket evincing that Appellant filed a petition for *nunc pro tunc* relief prior to the September 5, 2023 petition. Thus, it is unclear procedurally how the trial court entered an August 7, 2023 order granting Father's petition to reinstate Father's appeal rights *nunc pro tunc* when Father's counsel did not file a petition to reinstate Father's appeal rights *nunc pro tunc* until a month later, on September 5, 2023.

Given this record, we are compelled to conclude that Father's instant notice of appeal from the December 23, 2022 order is not properly before this Court. First, although the parties did not challenge the timeliness of the petition to appeal *nunc pro tunc*, this Court may raise the issue *sua sponte* since it goes to our jurisdiction to entertain an appeal. **See In re C.G.**, 791 A.2d 430, 433 n. 2 (Pa. Super. 2022). Second, it was not appropriate for the trial court to grant Father's petition to appeal *nunc pro tunc* that was filed **seven months** after this Court's February 27, 2023 order dismissing Appellant's first appeal at 59 WDA 2023. This Court in **In re Adoption of W.R.**, 823 A.2d 1013 (Pa. Super. 2003), recognized that:

Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the trial judge. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. As a general matter, a trial court may grant an appeal *nunc pro tunc* when a delay in filing an appeal is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, as they relate to either the appellant or his counsel, and the appeal is filed within a **short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness**, and the time period which elapses is of **very short duration**, and [the] appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*. **The circumstances occasioning the failure to file an appeal must not stem from counsel's negligence** or from a failure to anticipate foreseeable circumstances.

*Id.* at 1015-16 (emphasis added). ***See also Amicone v. Rok***, 839 A.2d 1109 (Pa. Super. 2003) (stating that a petition to file an appeal *nunc pro tunc* must be filed within a reasonable time after the occurrence of the extraordinary circumstance).

Instantly, there is no explanation in Father's "Petition For Ineffectiveness Assistance of Counsel," in which he sought the reinstatement of his appeal rights *nunc pro tunc*, as to why the petition was filed seven months after the appeal at 59 WDA 2023 was dismissed. Thus, Father has not established that the delay in filing his request to appeal *nunc pro tunc* was caused by extraordinary circumstances. Moreover, the seven months that passed between Father's prior appeal being dismissed and the filing of his petition to reinstate his appeal rights is not a 'very short duration' that would support the court's reinstatement of his appeal rights *nunc pro tunc*. Therefore, we conclude that the court erred by reinstating Father's appeal

rights *nunc pro tunc*.  As Father's present appeal is patently untimely, we are compelled to quash.

In any event, even if Father's appeal were timely, we would conclude that no relief is due.  Essentially, Father argues that, because Mother was also with B.B. during the "3-5 day time period prior to her appearing at a physician for suspected seizure activity[,]" she could have been the perpetrator of the abuse B.B. suffered.  Father's Brief at 9.  According to Father, "[t]he [c]ourt erroneously determined that Father was the [p]erpetrator of abuse on the basis that Mother took the stand and merely said [she] did nothing wrong." *Id.* at 10.  He insists that the court concluded he was the perpetrator of the abuse solely because he chose not to testify, and that "[t]he evidence in this matter demonstrates a scenario where it is just as likely it could have been either of the parties, if not more likely it was the Mother who perpetrated this offense."  *Id.*  Thus, he concludes that "[t]he [c]ourt was left guessing" and its "decision should be vacated."  *Id.*

We would find no merit in Father's argument.  Initially,

> the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).  "The trial court is free to believe all, part, or none of the evidence presented and is likewise free

to make all credibility determinations and resolve conflicts in the evidence."

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Here, Father does not challenge the court's finding that B.B. suffered abuse, or dispute the court's determinations regarding the timeline for when that abuse occurred. Specifically, the court found that,

> Mother was the primary caretaker from Saturday, June 11[, 2022,] in the evening until Monday[,] June 13[, 2022,] in the evening, when Father returned from an extended work shift. Father was in a primary caretaker role from when he returned from work until [Mother and Father] took the Child to visit grandparents on Tuesday evening, as Mother was reportedly out of the home for large portions of time on Tuesday. Both parents agree that the child was extremely lethargic and, at times, overly fussy on Tuesday and Wednesday. On Thursday, Mother noticed what she believed to be seizure activity. She recorded the activity on her phone and reached out to Maternal Grandmother before contacting the Child's pediatrician, who recommended the parents take the Child to Children's Hospital.

Order of Adjudication and Disposition, 12/23/22, at 2.

Clearly, Father and Mother were the only two individuals who were alone with B.B. over the days when the abuse at some point occurred; thus, one of them was the perpetrator of that abuse.[4] The court found credible Mother's testimony that "she did not do anything that injured the Child." *Id.* We cannot overturn that credibility determination. Moreover, as the court observed, Father offered no testimony or evidence that he did not commit the

_____

[4] Notably, Father does not explicitly argue, or point to any testimony to support, that B.B. was alone with the paternal grandparents when Father and Mother took her to visit them, and that they could have inflicted the injuries to B.B.

abuse. ***See id.*** Accordingly, "the [c]ourt [was] left with the undisputed testimony that the Child suffered this injury while in Father's care[,]" ***id.***, which supports the court's decision that Father perpetrated the abuse on B.B. Thus, even if Father's appeal were timely, we would not overturn the trial court's order.

Appeal quashed.

President Judge Emeritus Panella joins this memorandum.

Judge King concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 4/1/2024