J. S38015/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| W.L.P., FATHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| Y.L.M., MOTHER | : | No. 3332 EDA 2015 |
| | : | |
| APPEAL OF:  W.L.P., FATHER | : | |

Appeal from the Order, October 5, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at No. OCO701760

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED JULY 08, 2016**

W.L.P. ("Father") appeals, *pro se*, from the order entered October 5, 2015, in the Philadelphia County Court of Common Pleas, denying his motion for leave to appeal *nunc pro tunc* the custody order of October 14, 2014 awarding sole legal and physical custody of W.P., III, born in April of 2001, I.P., born in February of 2007, and M.P., born in January of 2009 (collectively, the "Children"), to Y.L.M. ("Mother").  After review, we affirm.

The relevant factual and/or procedural history was summarized by the trial court as follows:

> The various filings in this child custody matter heard by this court are as follows:  Petition for Partial Physical Custody filed April 5, 2011 (Father); Petition for Contempt filed February 22, 2013 (Father); Complaint for Primary Physical Custody filed April 5, 2013 (Mother); Petition for Paternity Testing filed June 4, 2013 (Father); Motion for Recusal filed

February 24, 2014 (Father); Motion for Recusal filed August 12, 2014 (Father) and Motion for Recusal filed August 5, 2015 (Father).

An interim order was entered on June 21, 2013, awarding [Mother] sole physical and sole legal custody of the [C]hildren . . . , subsequent to a hearing on a Petition for Emergency Relief filed on June 6, 2013.

The first custody hearing before this court was scheduled for July 22, 2013, but was continued pending the results of the paternity tests requested by Father for the three children. . . . After results were received, an order was entered dated August 28, 2013, adjudicating [Father] the [f]ather of the three children. Custody hearings were then conducted on November 1, 2013, January 6, 2014, March 31, 2014[1] and August 24, 2014. Father's Petitions for Contempt and first two petitions for recusal were denied on August 24, 2014. A final custody order together with a Summary Opinion was entered on October 14, 2014, awarding Mother sole physical and sole legal custody and denying Father's petition for partial physical custody.[2]

No Notice of Appeal of the October 14, 2014 order was ever docketed, nor was any copy of a Notice of Appeal ever received by this Court, nor has any copy of a Notice of Appeal ever been located in the court file.

---

[1] Technical difficulties allegedly prevented this hearing from proceeding as scheduled. (Trial court summary opinion, 10/14/14 at 2-3.)

[2] Father was, however, granted telephone contact with the two younger children, at Mother's discretion, at the home of a paternal relative or other person who could appropriately monitor the conversation. (Trial court order, 10/14/14 at 1.) Further, Mother was directed to secure a therapist recommendation for the oldest child, at which time telephone contact between the child and Father may occur at the child's request and/or as recommended by the therapist. (*Id.* at 1-2.)

> On March 13, 2015, Father filed an Application for Leave to Appeal Nunc Pro Tunc with regard to the October 14, 2014 order, which Application stated that he had filed a Notice of Appeal on November 7, 2014 and it was never docketed. A copy of a Notice of Appeal of the October 14, 2014 order, dated November 7, 2014, was attached to said Application as Exhibit "A." The certificate of service attached to said Notice of Appeal states that the Notice was sent to the Clerk of Court, Family Court Division on Chestnut Street in Philadelphia on November 7, 2014.[3] No document showing delivery of the appeal to the prison authorities was attached to said Notice.[4]

Trial court opinion, 12/4/15 at 1-2 (footnotes omitted).

The trial court conducted hearings on Father's motion for leave to appeal *nunc pro tunc* on June 1, 2015, July 20, 2015, and October 5, 2015. Father, at all times relevant hereto, has been incarcerated at SCI-Houtzdale, where he is serving a sentence of 35½ to 71 years. He appeared and participated in these hearings by video conference from the correctional facility. Aside from Father, the court additionally took testimony from Corrections Assistant Superintendent, Rebecca Reipr, on June 1, 2015, and three trial court employees, two from the Clerk of Court, Fred Keller and

---

[3] Father readily admitted that he did not send a copy of the notice of appeal to the trial judge or counsel for Mother because he did not have the funds. (Notes of testimony, 6/1/15 at 10.)

[4] Father did, however, attach correspondence to the Clerk of Court, Administrative Judge, Superior Court Prothonotary, and from the Deputy Prothonotary, dated December 7, 2014, December 26, 2014, February 24, 2015, and March 2, 2015, regarding his appeal. This correspondence was not copied to the trial judge or counsel for Mother. (Motion for leave to appeal *nunc pro tunc*, 3/13/15.)

Doug Jamieson, and one from Administrative Services/mail room, Thomas Hanna, on July 20, 2015.[5]

Father testified that he sent a notice of appeal of the October 14, 2014 order to the Clerk of Court for filing on November 7, 2014. (Notes of testimony, 6/1/15 at 6.) Upon not receiving a filed copy in return, Father stated that he sent correspondence dated December 7, 2014, to the Clerk of Court regarding the status of his appeal and December 26, 2014, to the Administrative Judge regarding the Clerk of Court's lack of filing and lack of response. (*Id.* at 7; motion for leave to appeal *nunc pro tunc*, 3/13/15, Exhibits "B" and "C".) Father then sent correspondence dated February 24, 2015, to the Prothonotary of this court inquiring as to whether an appeal had been forwarded by the trial court. (*Id.* at 8; motion for leave to appeal *nunc pro tunc*, 3/13/15, Exhibit "D.") A response dated March 2, 2015, from the Deputy Prothonotary advised that, after review of the dockets, no such appeal had been filed. (*Id.*; motion for leave to appeal *nunc pro tunc*, 3/13/15, Exhibit "E.")

Father testified on June 1, 2015, that he sent the November 7, 2014 notice of his appeal using one his eight free envelopes provided by the

---

[5] The testimony of these trial court employees became relevant as counsel for Mother reminded the trial court that Father's November 7, 2014 notice of appeal was allegedly sent at or around the time that the Family Court relocated to new facilities. (Notes of testimony, 6/1/15 at 24-28.) The testimony failed to reveal any issues with the mail during this time period. (Notes of testimony, 7/20/15 at 11-39.)

correctional facility and, therefore, did not need to append a cash slip. (Notes of testimony, 6/1/15 at 9-13.) Nonetheless, on June 29, 2015, Father filed an amendment to exhibits in *nunc pro tunc* appeal, which included Exhibit "F," a copy of a Commonwealth of Pennsylvania Department of Corrections cash slip, dated November 7, 2014, evincing legal mail to the Clerk of Courts, Family Court Division, in Philadelphia. (Amendment to exhibits in *nunc pro tunc* appeal, 6/29/15.) This precipitated the trial court to issue an order dated July 2, 2015, for Father to produce the corrections official who signed the cash slip "to confirm its authenticity."[6] (Order, 7/2/15.) At the hearing on July 20, 2015, where Father asserted that he had been "moved on [sic] three different housing units . . . and can't even recall who the officer is" and further suggested that "[n]o officer is going to come up to a court situation unless he's subpoenaed by the Court," the court therefore entered an order directing the warden at SCI-Houtzdale ascertain the identity of the official who signed the cash slip. (Notes of testimony, 7/20/15 at 6; order, 7/20/15.) On August 21, 2015, after receiving correspondence that a mailroom inspector whose handwriting appeared on the cash slip, indicating no additional postage was necessary, had been identified, the court entered an order scheduling the October 5, 2015

---

[6] The court explained that "since this slip was not part of the copy of the Notice of Appeal attached to the Nunc Pro Tunc Motion and was never previously received by this court, additional testimony was needed to establish the authenticity of said document for proof of filing with the prison authorities." (Trial court opinion, 12/4/15 at 5.)

hearing. (Letter, 8/19/15; order, 8/21/15.) In so doing, the court further ordered that Father present the original cash slip and that the Assistant Corrections Superintendent produce this mailroom inspector at the hearing. (Order, 8/21/15.) However, at the October 5th hearing, Father removed himself,[7] thereby concluding the hearing prior to the court determining whether the requested mailroom inspector was present. (Notes of testimony, 10/5/15 at 5.) As Father removed himself from the proceedings, after having also done so on July 20, 2015,[8] the trial court denied Father's motion for leave to appeal *nunc pro tunc*. (Notes of testimony, 10/5/15 at 6.) Father filed a notice of appeal, *pro se*, on November 5, 2015.[9]

---

[7] Father refused to proceed and continue with the hearing unless the court first addressed his also outstanding motion for recusal, filed August 5, 2015, stating, in part, "I'm not going forward with anything else until you recuse yourself. If you're not recusing yourself it's the end of this hearing." (Notes of testimony, 10/5/15 at 5.)

[8] Father excused himself from the hearing on July 20, 2015, after raising the issue of recusal. (Notes of testimony, 7/20/15 at 9-11.) The court chose to continue and took the testimony of the trial court employees. (*Id.* at 11.)

[9] As the October 5, 2015 order was entered on the docket the same day, the notice of appeal had to be filed by November 4, 2015. *See* Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken). The notice of appeal was filed on the 31st day, on November 5, 2015. However, Father attached to his appeal a copy of the cash slip from the Commonwealth of Pennsylvania Department of Corrections reflecting that the appeal was filed with prison authorities for mailing on November 1, 2015. Further, the trial court, recognizing the timeliness of the instant notice of appeal, indicated a copy postmarked November 2, 2015, was received in chambers November 4, 2015. (Trial court opinion, 12/4/15 at 3.) Therefore, pursuant to the prisoner mailbox rule, the instant appeal was timely filed. *See Commonwealth v. Jones*, 700 A.2d 423 (Pa. 1997); Pa.R.A.P. 121(a).

Our standard of review of an order denying an appeal ***nunc pro tunc*** is abuse of discretion. ***In the Interest of M.S.K.***, 936 A.2d 103, 104 (Pa.Super. 2007).

> An abuse of discretion is not merely an error of judgment but is found where the law is "overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record."

***Id.*** (citation omitted).

In order to grant an appeal ***nunc pro tunc*** an appellant must prove: "(1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay." ***Towey v. Lebow***, 980 A.2d 142, 144 (Pa.Super. 2009), quoting ***Criss v. Wise***, 781 A.2d 1156, 1159 (Pa. 2001). On this topic, we have further stated:

> Allowance of an appeal ***nunc pro tunc*** lies at the sound discretion of the Trial Judge. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. As a general matter, a Trial Court may grant an appeal ***nunc pro tunc*** when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel

> learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal ***nunc pro tunc***. ***McKeown v. Bailey***, 1999 PA Super 135, 731 A.2d 628, 630 (Pa. Super. 1999) (citations omitted).
>
> Our Supreme Court has made it clear that the circumstances occasioning the failure to file an appeal must not stem from counsel's negligence or from a failure to anticipate foreseeable circumstances. ***Criss v. Wise***, 566 Pa. 437, 781 A.2d 1156 (2001).

***In re Adoption of W.R.***, 823 A.2d 1013, 1015-1016 (Pa.Super. 2003).

In the instant matter, in denying Father's request for ***nunc pro tunc*** relief, the trial court explained:

> Appellant absented himself from the hearing on his Application for Leave to Appeal Nunc Pro Tunc before testimony was concluded and before presenting the evidence necessary to meet his burden of proof to show that he delivered the Notice of Appeal from the October 14, 2014 order to the prison authorities for mailing on or before November 13, 2014. This proof was necessary because no copy of the Notice of Appeal was ever docketed, received by this court or located in the court file. Despite this court's considerable efforts to instruct Appellant on the burden he had to meet and to direct that necessary witnesses appear to testify, Appellant exited the hearing because the court sought to proceed with testimony rather than first address issues which Appellant first wanted addressed. Hence, Appellant is not entitled to appellate relief.

Trial court opinion, 12/4/15 at 11.

As argued by Mother, through counsel, the trial court properly denied Father's application.[10]   (Mother's brief at 7-10.)   "Father failed to produce any evidence regarding his claim, failed to rebut any evidence demonstrating that his claim was baseless . . . , and refused to participate in scheduled listings." (*Id.* at 9-10.)  We are constrained to agree with the trial court and Mother.

Given that Father, who is incarcerated, averred that he filed a notice of appeal, which was subsequently not received and/or docketed by the trial court, with prison officials on November 7, 2014, and proffered a cash slip, although belatedly, this requires consideration of the prisoner mailbox rule. The prisoner mailbox rule provides that an appeal by an inmate is deemed "filed" on the date that it is deposited with prison authorities and/or placed in the prison mailbox. *Jones*, 700 A.2d at 426 (noting evidence such as a postal form 317, certificate of mailing, prison "cash slips," and other "reasonably verifiable evidence" will be accepted as conclusive proof that the prisoner mailbox rule is applicable); Pa.R.A.P. 121(a) ("A *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of the date that the

---

[10] Mother also raises procedural issues with the instant appeal.   (Mother's brief at 4-7.)

prisoner deposited the *pro se* filing with the prison authorities."). Hence, if in fact delivered to prison officials on November 7, 2014, as reflected by the late presented cash slip, Father's notice of appeal of the trial court's October 14, 2014 custody order would have been timely. ***See*** Pa.R.A.P. 903(a); ***Jones***, 700 A.2d at 426; Pa.R.A.P. 121(a).

However, the record reveals that Father removed himself from the proceedings regarding his application for ***nunc pro tunc*** relief on both July 20, 2015 and October 5, 2015. In so doing, Father failed to allow completion of the inquiry into the authenticity of his cash slip and whether he timely provided prison authorities with his November 7, 2014 notice of appeal of the October 14, 2014 custody order for mailing. This was important as Father, who admittedly did not send a copy of the notice of appeal to the trial judge and opposing counsel, produced a cash slip, which had not been included with his motion and attached notice, four months after filing his motion, after denying a cash slip existed. Moreover, Father had failed to present the original cash slip for inspection. Consequently, the record supports a conclusion that the trial court did not abuse its discretion in denying Father ***nunc pro tunc*** relief. As reflected, Father failed to meet his burden of proof.

Accordingly, based on the foregoing analysis, we affirm the trial court's order denying Father's motion for leave to appeal ***nunc pro tunc***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016