J-A08028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF MARION L. DULL, DECEASED, LATE OF NAPIER TOWNSHIP, BEDFORD COUNTY, PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| JAMES P. DULL AND DIANE L. DULL | |
| Appellants | |
| v. | |
| DONALD W. DULL AND HEATHER R. HARBERT | |
| Appellees | No. 1431 WDA 2018 |

Appeal from the Order Entered June 21, 2018
In the Court of Common Pleas of Bedford County
Orphans' Court at No: 85 FOR 2016

BEFORE: PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                **FILED  AUGUST 27, 2019**

Appellants, James P. Dull and Diane L. Dull, appeal from an order affirming the decree of the Register of Wills admitting a copy of the holographic will of Marion L. Dull, deceased ("Decedent") to probate.  We conclude that the Orphans' Court abused its discretion by granting Appellants leave to appeal to this Court *nunc pro tunc*, and we therefore quash this appeal.

This is a dispute between Decedent's three children, James, Diane and Donald Dull ("Appellee").  Decedent died on January 7, 2016.  On June 20, 2016, the Bedford County Register of Wills admitted a copy of Decedent's holographic will dated December 1, 2011 to probate.  On October 27, 2016,

Appellants appealed the Register's decision to the Court of Common Pleas of Bedford County, Orphans' Court Division. On the same date, Appellants filed a petition in the Orphans' Court requesting issuance of a citation to all interested parties to show cause why the Register's probate decree should not be set aside and vacated. On December 7, 2016, Appellee filed an answer to the petition. On April 11 and 12, 2018, the Orphans' Court held an evidentiary hearing concerning the petition.

In an opinion and order docketed on June 21, 2018, the Orphans' Court affirmed the decree of the Register of Wills admitting the copy of the holographic will to probate. On the same date, the prothonotary noted on the docket that it sent Pa.R.Civ.P. 236 notice of the order to the parties.

The Orphans' Court found the following facts in its opinion:

[Decedent] died on January 7, 2016. At the time of her death, Decedent had three children: [James, Diane] and [Appellee] Donald Dull.

Kayley Twigg, [Appellee]'s daughter and Decedent's granddaughter, testified that she lived beside Decedent for the first 25 years of her life and visited with her often. Twigg testified that, in the spring of 2012, Decedent handed her a manila envelope which contained a revoked typewritten will (Exhibit 1) and a handwritten holographic will (Exhibit 2). Twigg testified that both of these documents were originals. Twigg made copies of both documents for Decedent and kept a copy of the wills for herself. Twigg testified that Decedent put the original documents back into the manila folder and placed the folder into a clothes hamper. Twigg did not disclose the existence of either document to anyone due to the wishes of Decedent. On January 16, 2016, after a family search for Decedent's will, Twigg searched the clothes hamper she saw Decedent place the envelope into back in 2012. Twigg then informed [Appellee] about the existence of the wills and that they were now missing from the hamper. Twigg

- 2 -

and [Appellee] viewed pictures from a trail camera they had set up in the home. Twigg testified that the pictures from the trail camera showed her aunt and [Appellant James's] wife, Kay Dull, holding a folder that was the same size, shape and color that held Decedent's wills. While Twigg conceded that she did not personally observe Decedent write [the holographic will], Twigg testified that she could identify [it] as being entirely in Decedent's handwriting and that it was the same as the original she copied in 2012.

Kay Dull, [Appellant James's] wife, testified that, on January 16, 2018, she found a manila envelope marked "Will," and removed the envelope from the home without telling anyone. Kay kept her discovery a secret from everyone until the morning of January 22, 2018 when she showed her husband the envelope and its contents. Kay testified that she kept the will envelope a secret because she was hoping [Appellee] would admit to "planting" the envelope in the hamper, and because she was concerned over her husband's reaction. When she did open the envelope on January 22, Kay found the original, revoked typewritten will (Exhibit 11). Kay testified that the envelope did not contain the original nor a copy of Exhibit 2, which is the purported holographic will. In addition, she denied destroying the original of Exhibit 2. Kay testified that the body of Exhibit 2 appeared to be in Decedent's handwriting but denied that the date was in Decedent's handwriting.

[Appellant] James Dull testified that several searches of Decedent's home were done in an attempt to locate a will. After the final search, [James's wife] Kay approached him on January 22, 2018 with an envelope marked "Will." James testified that the envelope was already opened when he first saw it, but that it had just been opened because he "heard" Kay open the envelope outside his presence. He testified that he could not say if Kay removed anything from the envelope before she gave it to him. James testified that the envelope only contained Exhibits 10 and 11, and that neither the original nor a copy of Exhibit 2 was present. James testified that the cursive writing on Exhibit 2 is Decedent's handwriting and that it contains her signature, but he denied that the writing above the cursive is Decedent's handwriting.

[Appellee] Donald Dull testified that he was aware of the envelope that contained Decedent's wills even before she passed away but

did not say anything to his siblings due to Decedent's wishes. [Appellee] testified that he retrieved the will envelope from Decedent's hamper after she passed away and placed it into a safe. [Appellee] testified that the will envelope produced at the Register of Wills hearing (Exhibit 9) was not the same envelope he obtained from the hamper, because the will he retrieved had a metal clasp and did not open from the side. [Appellee] opened the will envelope on two occasions before January 16, 2018 and observed that it contained Exhibit 10, Exhibit 11, and the original of Exhibit 2. [Appellee] believes Exhibit 2 to be entirely in Decedent's handwriting. [Appellee] testified that he suggested that his siblings search the hamper on January 16, 2018 in an effort to get someone else to find the will envelope. [Appellee] testified that he was unaware that someone found the will envelope until he viewed the trail camera pictures depicting Kay holding the envelope.

Opinion and Order, 6/21/18, at 1-4. Based on this evidence, the Orphans' Court determined that Decedent properly executed the original holographic will. It further held, based on Twigg's testimony, that the original will and probated copy of the will are "exactly the same." *Id.* at 6. In this regard, the court wrote:

Twigg testified that she observed the original holographic will in the spring of 2012 and made copies of said instrument at Decedent's request. Twigg also identified Exhibit 2 . . . as a copy of the original holographic will given to her by Decedent in 2012 . . . Upon our review of all the testimony and our view of the witnesses, we find Kayley Twigg to be a reliable and credible witness and accept her testimony as fact.

*Id.* at 6; *see also id.* at 6 n.2 (court's description of Twigg as "the most credible" substantive witness"). Finally, again because of Twigg's "credible" testimony, the court determined that the original holographic will was neither destroyed nor revoked at the time of Decedent's death. *Id.* at 5-7.

On July 2, 2018, Appellants' counsel improperly filed post-trial motions in the Orphans' Court from the June 21, 2018 order affirming the Register of Wills' decree admitting the holographic will to probate. In an order docketed on July 20, 2018, the Orphans' Court denied all post-trial motions.

On August 17, 2018, Appellants, through counsel, filed a petition in the Orphans' Court for leave to appeal *nunc pro tunc*. Counsel acknowledged that the applicable rules required him to appeal within thirty days of the June 21, 2018 order. Petition, ¶ 31. Nevertheless, he requested leave to appeal *nunc pro tunc* by alleging that a "breakdown in the court's operations" prevented him from taking a timely appeal. Petition, ¶¶ 20-33. This "breakdown," said counsel, consisted of the following:

1. On July 2, 2018, the prothonotary accepted Appellants' post-trial motions for filing without informing counsel that post-trial motions were not permitted under the Orphans' Court Rules or that the proper procedure was to appeal directly from the June 21, 2018 order;
2. When the Orphans' Court denied the post-trial motions on July 21, 2018, it failed to state that post-trial motions were not permitted under the Orphans' Court Rules or that the proper procedure was to appeal directly from the June 21, 2018 order;
3. On August 14, 2018, counsel learned that post-trial motions were not permissible due to amendments to the Orphans' Court Rules that had become effective on September 1, 2016, and that the proper procedure was a direct appeal to the Superior Court within thirty days of the June 21, 2018 order;
4. Upon learning of the proper procedure, counsel promptly requested leave to appeal *nunc pro tunc*.

*Id.*

In an order docketed on September 24, 2018, the Orphans' Court granted Appellants leave to appeal to this Court within fifteen days. On October 4, 2018, Appellants filed a notice of appeal.

In this Court, Appellants raise a series of arguments that, reduced to their essence, contend that the Orphans' Court (1) improperly determined that Appellee had the burden of proof, thus enabling him to present damaging rebuttal testimony from Twigg, and (2) abused its discretion by finding Appellants' evidence (particularly Twigg's testimony) credible. Before reaching the merits of these issues, we first address whether this appeal is timely, an issue that the parties have not mentioned but which we may raise *sua sponte*. **In Re Adoption Of W.R.**, 823 A.2d 1013, 1015 (Pa. Super. 2003) (where Orphans' Court granted appellant leave to appeal *nunc pro tunc*, "although the parties did not challenge the timeliness of this appeal, we may raise the issue *sua sponte* since it goes to our jurisdiction to entertain an appeal").

Allowance of an appeal *nunc pro tunc* "is a recognized exception to the general rule prohibiting the extension of an appeal deadline." **Union Elec. Corp. v. Bd. Of Prop. Assessment, Appeals & Review of Allegheny Cty.**, 746 A.2d 581, 584 (Pa. 2000). "[A]n appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." **Id.** The decision to permit an appeal *nunc pro tunc*

lies at the sound discretion of the Trial Judge. More is required before such an appeal will be permitted than the mere hardship imposed upon the appellant if the request is denied. As a general matter, a Trial Court may grant an appeal *nunc pro tunc* when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

*McKeown v. Bailey*, 731 A.2d 628, 630 (Pa. Super. 1999). "[T]he circumstances occasioning the failure to file an appeal," however, "must not stem from counsel's negligence or from a failure to anticipate foreseeable circumstances." *Adoption of W.R.*, 832 A.2d at 1016.

We conclude that the Orphans' Court abused its discretion by granting Appellants leave to appeal *nunc pro tunc*, because the delay in this appeal did not arise from extraordinary circumstances such as "some breakdown in the court's operation through a default of its officers." *McKeown*, 731 A.2d at 630. To the contrary, the delay in this appeal took place because Appellants' counsel failed to follow published rules of procedure.

Pennsylvania Rule of Appellate Procedure 342, which was last amended in 2012, provides, *inter alia*, that an appeal "may be taken as of right" from an Orphans' Court order "determining the validity of a will . . ." Pa.R.A.P.

342(a)(2). Except in circumstances not relevant here,[1] an appeal "shall be filed within thirty days after entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). In this case, the appeal period expired on July 23, 2018,[2] more than two months before Appellants filed their notice of appeal.

Appellants did not extend the appeal period by filing post-trial motions, because the Orphans' Court Rules prohibit post-trial motions. Orphans' Court Rule 8.1, which became effective on September 1, 2016, prior to Appellants' appeal from the Register of Wills to the Orphans' Court, provides: "Except as provided in Rule 8.2, no exceptions or post-trial motions may be filed to any order or decree of the court." Orphans' Court Rule 8.2, which also became effective on September 1, 2016, provides: "By motion, a party may request the court to reconsider any order that is final under Pa.R.A.P. 341(b) or 342, or interlocutory orders subject to immediate appeal under Pa.R.A.P. 311, so long as the order granting reconsideration is consistent with Pa.R.A.P. 1701(b)(3) [reconsideration]." Orphans' Court Rule 8.2(a). Rule 8.2 does

---

[1] **See** Pa.R.A.P. 903(c).

[2] The thirtieth day after June 21, 2018, the date of entry of the order, fell on Saturday, July 21, 2018. Consequently, the appeal period expired on Monday, July 23, 2018. Pa.R.A.P. 107 ("Chapter 19 of Title 1 of the Pennsylvania Consolidated Statutes (rules of construction) so far as not inconsistent with any express provision of these rules, shall be applicable to the interpretation of these rules and all amendments hereto to the same extent as if these rules were enactments of the General Assembly"); 1 Pa.C.S.A. § 1908 (when the last day of statutory period falls on Saturday or Sunday, such day shall be omitted from time computation).

not apply here because the Orphans' Court did not grant reconsideration of its June 21, 2018 order.

Counsel for Appellants disregarded the foregoing rules by filing post-trial motions. As a result, counsel failed to appeal to this Court within thirty days after the order affirming the Register of Wills's decree. The appeal filed on October 4, 2018, two and a half months after the Orphans' Court's order, was untimely. ***Johnson v. Johnson***, 515 A.2d 960, 961-62 (Pa. Super. 1986) (appeal filed more than thirty days after entry of judgment in garnishment action quashed; garnishee was not entitled to file post-trial motions, and filing such motions did not extend time in which appeal could be filed, where no trial was held in garnishment case and judgment on the pleadings for creditor was entered prior to trial).

***W.R.*** teaches that *nunc pro tunc* relief is unavailable under these circumstances. In that case, on September 25, 2001, the Orphans' Court entered an order terminating the appellant's parental rights. On October 15, 2001, the appellant filed exceptions to the termination order, even though the Orphans' Court Rules then in effect prohibited exceptions in involuntary termination cases.[3] On October 30, 2001, the Orphans' Court denied the

_____

[3] In 2001, Orphans' Court Rule 7.1(e) provided: "No exceptions shall be filed to any order in involuntary or adoption matters under the Adoption Act, 23 Pa.C.S. Section 2501 et seq." Subsequent to ***W.R.***, Rule 7.1 was rescinded. The rules relating to post-trial motions and motions for reconsideration are now located in Orphans' Court Rules 8.1 and 8.2.

exceptions. On March 19, 2002, almost six months after the termination order, the appellant filed a petition seeking allowance of appeal *nunc pro tunc* on the ground that counsel did not receive the order denying exceptions until March 14, 2002. On March 21, 2002, the Orphans' Court granted leave to appeal *nunc pro tunc*. Several days later, the appellant filed a notice of appeal.

This Court *sua sponte* raised the issue of the appeal's timeliness, because this question implicated our jurisdiction to entertain the appeal. *Id.* at 1015. We declared the appeal untimely:

> [T]he petition for involuntary termination of parental rights was filed on August 13, 2001, more than seven months after the effective date of amended Orphans' Court Rule 7.1(e), and the hearings on the termination petition were held on September 17 and 25, 2001, more than nine months beyond the effective date of Rule 7.1(e). Thus, the rule precluded the filing of exceptions, and [the appellant] should have filed a notice of appeal on or before October 25, 2001, the thirtieth day after entry of the order terminating her parental rights. *See* Pa.R.A.P. 903(a).

*Id.* We held that the Orphans' Court abused its discretion by granting leave to appeal *nunc pro tunc*, because "[t]here clearly was no fraud or breakdown in the processes of the trial court herein." *Id.* at 1016. Instead, the appeal was untimely because the appellant ignored Rule 7.1(e) and filed exceptions instead of appealing to this Court. *Id.* The appeal was quashed. *Id.*

Here, similar to *W.R.*, statewide procedural rules that became effective prior to these Orphans' Court proceedings required Appellants to appeal within thirty days after the court's order instead of filing post-trial motions. However,

like the appellant in **W.R.**, counsel for Appellants improperly filed post-trial motions and then filed an appeal after the thirty-day deadline. We see no fraud or breakdown in the Orphans' Court's processes under these circumstances, **Id.**, and we therefore must quash this appeal.

Courts of this Commonwealth have awarded *nunc pro tunc* relief in cases where parties take untimely appeals as a result of following the directions of court officials. **See**, **e.g. Department of Labor and Industry, Uninsured Employers Guaranty Fund v. W.C.A.B. (Gerretz, Reliable Wagon and Auto Body, Inc.)**, 142 A.3d 148, 155-56 (Pa. Cmwlth. 2016) (when workers' compensation judge erroneously included prohibitory language in decision and order that not only failed to advise litigant of right to appeal, as is customary in workers' compensation matters, but rather affirmatively directed litigant that it may not appeal, litigant may have right to *nunc pro tunc* relief; case remanded for further proceedings concerning whether litigant should have right to appeal *nunc pro tunc*); **Vietri ex rel. Vietri v. Delaware Valley High School**, 63 A.3d 1281, 1287 n.6 (Pa. Super. 2013) (trial court abused its discretion in denying plaintiff's request for restoration *nunc pro tunc* of right to file direct appeal, where (1) trial court granted summary judgment for defendants, (2) plaintiff improvidently filed motion for post-trial relief, (3) Superior Court quashed appeal on ground that post-trial motion remained pending in trial court, and (4) time for appeal expired during the resolution of post-trial motion). In this case, however, neither the Orphans' Court nor the

prothonotary affirmatively directed Appellants to file post-trial motions or not to appeal until the court decided the post-trial motions. Counsel for Appellants alone decided to take these steps. Thus, unlike **Gerretz** or **Vietri**, this case is not a worthy candidate for *nunc pro tunc* relief.

Appellants contended in their petition for leave to appeal *nunc pro tunc* that when counsel filed post-trial motions, the prothonotary and/or the Orphans' Court should have informed him that the proper procedure was to file an appeal instead. **W.R.** teaches a much different lesson: counsel must take care to review the rules himself and acts at his own peril if he fails to do so. We have written that "counsel is under a high duty of care to learn and familiarize himself with the local rules of all forums in which he chooses to practice law." **Ttmar, Inc. v. Sulka**, 586 A.2d 1372, 1373 (Pa. Super. 1991). It should come as no surprise that the same duty exists with regard to statewide rules such as the Orphans' Court Rules and Rules of Appellate Procedure.[4]

---

[4] In **Cubano v. Sheehan**, 146 A.3d 791 (Pa. Super. 2016), in the course of quashing an appeal, we briefly explained why the appellant's argument in her appeal would not have resulted in relief. **Id.** at 795 n.7. Following **Cubano**'s example, we observe that even if we did not quash this appeal, Appellants would not have obtained relief because none of their arguments have merit.

Appellants insist that Twigg's testimony contradicted a binding admission in Appellee's pleadings, Appellants' Brief at 32, but Appellants fail to demonstrate that they objected to Twigg's testimony on this ground during trial. More importantly, we do not believe that Twigg's testimony conflicted with Appellee's averments in the pleadings. In his answer to Appellants'

Appeal quashed.

Judgment Entered.

_Joseph D. Seletyn_ [signature]

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/27/2019

---

petition, Appellee admitted that on January 16, 2018, Kay Dull looked in Decedent's hamper and found a large manila envelope marked "Will" on the outside.  Twigg's testimony did not conflict with Appellee's admission.  Twigg merely testified that the envelope that Kay Dull removed from the hamper was different from the envelope that she, Twigg, saw Decedent place in the hamper in 2012.

Appellants argue that the Orphans' Court overlooked or failed to give proper weight to various items of evidence.  As the factfinder, the Orphans' Court was free to believe all, part, or none of the evidence.  Appellants would have us reweigh the evidence in their favor, which we are not willing or able to do.

Next, Appellants argue that they had the burden of proof instead of Appellee, but the Orphans' Court treated Appellee as having the burden of proof, thus enabling Appellee to present his case first and then present Twigg's damaging rebuttal testimony following the conclusion of Appellants' defense.  In our view, even if the court erroneously assigned the burden of proof to Appellee, this error was non-prejudicial.  Had the court assigned Appellants the burden of proof, thus enabling Appellants to present their case first, Appellee would have presented the same testimony by Twigg in his defense instead of in rebuttal.